UNITED STATES DISTRICT COURT
of
New Hampshire

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2011 JUN 14 P 1:17

| | |
|---|---|
| George J. Coupe, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| 1. Technology Investment Partners, ) | Civil Action No. 1'11-cv-292 — |
| 2. Kelly Neubecker, and ) | |
| 3. Caine & Weiner ) | |
| ) | |
| Defendants ) | |

COMPLAINT WITH JURY DEMAND

Now comes George Coupe, Pro Se, the Plaintiff, to appear and to respectfully submit this complaint and to request this Honorable Court find the Defendants Technology Investment Partners ("TIP") and their employee, Kelly Neubecker, of systematically and repeatedly defrauding Plaintiff Coupe. More specifically, to find Defendants TIP and Neubecker and TIP's Collection Agency, Caine & Weiner, to be in violation of the U.S. RICO law (18 U.S.C. 1964) by (a) fraudulently inducing Plaintiff Coupe to sign an agreement to pay $6,000 in excess of Fair Market Value in breach of the original lease buyout contract terms, and then two years later, (b) to sell the remaining equipment from the lease still in operation to a third party without releasing Plaintiff Coupe from any obligations on the lease - in violation of the conditions of the agreement with Mr. Coupe for that sale, and finally, of (c) wrongfully inserting negatives into Plaintiff

Coupe's Credit reports and by doing so, began to steadily and continuously severely damage Plaintiff Coupe in terms of lost income directly as a result of those erroneous negative credit reports - as follows:

### Summary of Factual Background and Allegations Common to All Counts

1) That Defendants TIP and Neubecker have filed suit against Plaintiff Coupe in the Michigan 48th District Court - falsely claiming a balance due of $7,122.29 on a so-called "extension" agreement that they prepared and fraudulently induced Plaintiff Coupe to sign at the satisfactory completion of the original 36 month equipment lease contract between TIP and Plaintiff Coupe's Employer, Parallel Robotics. (A copy of this 2 page complaint of TIP and a13 page notice of a 6/16/11 hearing – in Michigan - and Summary Disposition filing by TIP is also attached. The responses and counter-claims of Defendant Coupe have been returned by the Michigan court and are being re-filed in Michigan - concurrently with this Complaint in the New Hampshire District Federal Court.)

2) Defendant TIP's Michigan claim is false because the so-called "extension" was really an agreement to pay $6,000 more than the Fair Market Value of the equipment remaining in operation at the end of the lease, when Plaintiff Coupe's employer, Parallel Robotics, had complied fully with the fair market value purchase "buyout" option specified on the front of the original lease and in paragraph 12 of the back of the original lease.

3) In the opinion of Pro Se Plaintiff Coupe, to succeed in misleading and persuading Plaintiff Coupe to agree to pay $8,000 for exactly the same items Plaintiff Coupe and Parallel had already agreed with Defendant TIP to buy for $2,000 is a near-perfect definition of a fraudulent act. If this end-of-lease fraud is found by the jury to have been

followed-up by another fraudulent act in the sale of the same property to a third party two years later, then this qualifies as recurring fraudulent behavior an as such is an obvious violation of the RICO law, (18 U.S.C. 1964) particularly if TIP employs the same methodology in all their leases and therefore are not restricting this fraudulent pattern of behavior just to Plaintiff Coupe and his employer, Parallel Robotics.

4) The second fraud of Plaintiff Coupe by TIP occurred two years after the original lease was paid off. It was then that TIP sold the equipment remaining in operation from the lease to a third party, who had agreed to purchase the property from TIP only if TIP would agree to release Plaintiff Coupe and his employer from all liabilities and claims under the lease. This was a court-sponsored settlement agreement (in the York County Superior Court in Alfred Maine, the Honorable Justice Fritzsche, presiding, case # CV-09-296) between the third party and Plaintiff Coupe. This was an agreement that Plaintiff Coupe had notified TIP's employee, Kelly Neubecker, of in writing a few months before TIP sold the equipment to the third party – but Defendant Neubecker executed that sale in October, 2010, **without providing the releases of Plaintiff Coupe or his employer.** That is, this 2nd fraud was handled completely by Defendant Kelly Neubecker of TIP. (Attached is an e-mail to Plaintiff Coupe from Defendant Neubecker in early 2010 where Defendant Neubecker described the contract to sell the equipment to a 3rd party - with a full release of Plaintiff Coupe - and his employer - as "laughable".)

5) Instead TIP filed a negative credit report on Plaintiff Coupe on or about the time the third party sale took place in October, 2010. This report was filed by their collection agency, Caine & Weiner, the 3rd Defendant in this case.

6) The negative credit reports have caused Plaintiff Coupe to suffer lost income and excess

home mortgage interest damages at the annual rate of approximately $100,000 per year - beginning on March 15, 2011. Plaintiff Coupe believes he can work another 9 years and if Defendant TIP does not see that these errors are removed from his credit reports his losses during that period are expected to exceed over $1 million. Since TIP is in violation of the RICO law, Plaintiff Coupe is seeking treble damages against Defendants TIP, Neubecker, and Caine & Weiner - or about $3 million over the next 9 years.

7) Plaintiff Coupe does not wish to receive a penny of the lost income sooner than he would have earned it and if he is successful with the jury in this case, he only wants an annuity that will be subject to a trustee confidentially reviewing his annual tax returns and pay information. If his income should rise in spite of the negative errors in his credit reports, then the trustee's adjustments will be provided to the insurance company paying the annuity to Plaintiff Coupe and that portion of the monthly funds (in excess of the amount Plaintiff Coupe claimed to the jury as the most he could earn with negatives in his credit report) will be returned to the Defendants who were ordered by the jury to purchase the annuity for Plaintiff Coupe. (Presumably the annuity will be purchased with an up-front payment by the Defendants to the insurance company of about $750,000 for each million dollars of lost income awarded Plaintiff Coupe by the Jury.)

8) Plaintiff Coupe has attached three documents that substantiate his lost income counter-claims and they are (a) a copy of the credit report release (signed by Plaintiff Coupe) that the Robert Half executive search firm requires before embarking on a search for all key financial executive position applicants, (b) a scan of an October, 2010, Wall Street Journal article indicating that positive credit reports are now typically required of all applicants for financial positions and, (c) a copy of the Affidavit of Mr. McKittrick, the

CEO of Plaintiff Coupe's former employer, a public company named Kingston, where his compensation was set at $178,000 per year - to be competitive with other financial executives in similar-sized public companies. (Since time is of the essence, the Affidavit of Mr. McKittrick was used from another current case, and a replacement will be provided to this Honorable Court for this case as soon as possible.) Also attached is the negative credit report on Plaintiff Coupe and a collection letter – both generated by Defendant Caine & Weiner and demonstrating they are collecting on behalf of Defendant TIP.

9) Since Defendants TIP and Neubecker perpetrated these frauds on a New Hampshire resident and NH company while never leaving the state of Michigan, and the Defendants were the recipients of a portion of a deposit the Plaintiff's employer paid to a California leasing company named Tri-Nex – now out of business – in exchange for a Tri-Nex "master" lease – in a state where it against the state constitution to require a borrower to waive their rights to a jury trial – it is a dispute that Plaintiff & Pro Se Coupe believes is more appropriately resolved in Federal Court, not in a state court that is about 750 miles from Plaintiff Coupe's home in Nashua, New Hampshire.

10) Pro Se & Plaintiff Coupe also argues that by committing fraud, Defendant TIP has forfeited their ability to sue in the Michigan venue.

11) The Fair Market Value of the equipment still in operation at the end of the original three-year lease (in the fall of 2008) is based on the pricing of seven HP model 4200 computers that were still in good operating order at that time. Plaintiff Coupe estimates these surviving units had a fair market value ("FMV") of $1,925 (or about $275 per unit) on 10/01/08, and about a year later these same units had a FMV of about $160 each

(October, 2009 - per E-bay) and by October, 2010 these seven PC's were worth $100 each – the price Defendant TIP was paid by the 3rd party purchaser at that time. (See the attached invoice from TIP to Route One Fun – the 3rd party purchaser). TIP has not disputed any of these values and how could they, since the most recent is per the TIP invoice for $700 to the 3rd party purchaser. The only other items still in operation were about a dozen 5 year old office chairs (worth at best only garage sale prices of $5 each) and three HP projectors - that had images so weak they were worthless.

12) All the other equipment on the TIP lease wore out through "normal wear and tear" and all if these units were left in Hampton, NH, in October, 2008. The landlord in Hampton was asked if Defendant Kelly (or anyone) from TIP had called to verify the worn-out units were in Hampton in the fall of 2008 and he reported to Plaintiff Coupe a few weeks ago that no person from TIP had called since Plaintiff Coupe's former employer left those premises at that time. Copies of listings of all the equipment on the lease and the seven units remaining at the end of the initial 36 moths are attached, as well as the 36 month payment schedule adhered to strictly by the Plaintiff's employer – none of which TIP has disputed.

### Count #1 – The Bait & Switch fraud at the inception of the original lease.

13) Attached are copies of the Tri-Nex (California) lease and the $4,165 deposit paid by Plaintiff Coupe's employer, Parallel, to Tri-Nex Capital for the "master lease" agreement (dated 6/23/05) that had no personal guarantees or waivers of the constitutional right to a trial by jury. Also included is an e-mail to Tri-Nex from Plaintiff Coupe sent in November of 2006, disavowing the jury trial waivers as inconsistent with the original agreements and as terms obtained wrongfully by TIP by switching multiple copies of the

lease agreements in a way that made it hard to catch terms that were inserted but that were never agreed to by Plaintiff Coupe.

### Count #2 – The Fraudulent Inducement to pay $6,000 for Nothing.

14) The TIP lease has a notorious "evergreen" end of lease paragraph. It requires that if the lessee wishes to exercise the FMV buyout at the end of the original term the lessee must provide TIP with notification of this "at least 90 days before the end of the original 36 payments".

15) Plaintiff Coupe recognized this trap set by TIP at the time the lease was executed on 8/31/05 and he included a letter to that effect in with the original lease documents – also dated 8/31/05. A copy of that letter is attached. This meant that all Plaintiff Coupe's Former employer had to do was pay the $2,000 that the seven remaining PC's were worth (at FMV) at the end of the original 36 month lease and they would own them fully and the TIP lease would terminate.

16) Then, in breach of the original lease, Defendant TIP sent a fraudulently worded e-mail to Sue Schleicher – the accounting manager reporting directly to Plaintiff Coupe. The e-mail said "please find the Extension and Renewal document. Please have this executed…" The "Extension called for an additional $8,140 to be paid over the following 12 months. This e-mail from Defendant TIP to Plaintiff Coupe was in breach of the original agreement between the parties because paragraph 12 of that agreement requires that TIP provide Plaintiff Coupe's employer with the fair market value of the equipment they intended to purchase at that time - as Plaintiff Coupe had indicated to TIP in writing. This e-mail from TIP to Sue was a fraudulent solicitation by TIP to induce Parallel to pay $6,000 more for something than what it was worth.

17) In addition, TIP told Sue Schleicher to inform Plaintiff Coupe that "he was obligated to sign the extension in accordance with the original lease" - which she did - without checking the original lease first and without finding the purchase option letter Plaintiff Coupe had written and sent to TIP with all the newly signed lease documents at the beginning of the lease three years earlier. Plaintiff Coupe trusted that Sue had checked the lease file to verify what TIP had said was true (or not) and he signed the "extension" - seemingly being fooled into beginning to pay $6,000 for nothing.

18) Plaintiff Coupe's employer paid three "Extension" payments and then stopped – after $2,034.93 had been paid to TIP – slightly more than the fair market value of the TIP lease equipment remaining in operation at the time.

**Count #3 – The fraudulent sale by TIP of assets owned by Parallel Robotics to a 3rd Party.**

19) Two years after the original TIP lease ended there was the conclusion of a dispute between Plaintiff Coupe's employer-affiliate and the landlord of a video game theater in Kittery Maine. The dispute centered around whether a large portion of the facility was fit for the use intended and whether the rent that had been paid in Maine during the first year of operation was in excess of what should have been paid, or less than what should have been paid under the rental agreement.

20) The computer gaming equipment in the Maine facility was leased from TIP by Parallel Robotics and operated by an affiliate of Parallel, a company named Holo-Dek Gaming.

21) The dispute between the Maine landlord and the Parallel/Holo-Dek companies was concluded when the landlord negotiated the purchase of a portion of the computers and other gaming equipment directly with the leasing companies who provided the financing

for a portion of the equipment in the Maine facility.

22) The agreement between the parties was that when the landlord purchased the equipment he would obtain a release of Plaintiff Coupe and Parallel from the leasing company selling the landlord the equipment as part of the purchase agreement.

23) Defendant TIP defrauded Plaintiff Coupe and Parallel by selling the TIP financed 7 computers to the landlord (at fair market value) without releasing Plaintiff Coupe or Parallel as agreed.

24) The seven computers that TIP sold to the landlord had already been paid for (and were owned) by Parallel Robotics at the time TIP sold them to the landlord on 10/20/10. Plaintiff Coupe was willing to let TIP sell them and keep the money as a settlement of the "Extension" that had been fraudulently obtained.

25) Attached are four e-mails and letters between TIP and Plaintiff Coupe where Plaintiff Coupe made this very clear to TIP. As indicated above, not only did TIP fail to act in good faith and release Plaintiff Coupe and Parallel as part of the sale to the landlord, they then wrongfully sent damaging negative reports to the credit reporting agencies on Plaintiff Coupe, in breach of the agreement to do the opposite.

**The Michigan Case should not proceed until the Federal Court decides on Jurisdiction.**

26) The Michigan Court is being asked not to proceed with the complaint filed by TIP there until the New Hampshire Federal District Court decides on the jurisdictional issues in this case.

27) Plaintiff TIP in the Michigan case has improperly required Plaintiff Coupe in the pending NH Federal Case to travel about 750 miles each way on Thursday, June 16, 2011, for a 2:00 PM hearing on a summary disposition of the case requested by TIP, stating (in

paragraph 12 of the summary disposition) that "there is no genuine legal or factual issue in question".

28) Plaintiff TIP contradicts this statement numerous times in their pleading – for example: They are (a) acknowledging (in paragraph 4) the possibility that there is a dispute over whether TIP used an employee reporting to Mr. Coupe to fraudulently obtain his signature on the "Extension" agreement, (b) acknowledging (in paragraph 6) that there is the possibility of a dispute over whether the notorious Extension was a solicitation to pay $6,000 for equipment that no longer worked and was worthless and (c) claiming (in paragraph 11) there was no validity to the defrauding charges without addressing with a single word in all of their state court filings the letter written by Mr. Coupe to TIP on 8/31/05 giving notice of the intent to exercise the Fair Market Value purchase of the equipment at the end of the original 36 monthly payments and TIP's failure to provide that value as called for in the original lease – instead of sending the notorious "Extension" agreement.

29) Under these circumstances a summary disposition cannot be issued and should not require the presence of the Defendant at this stage in the proceedings. It will cost Plaintiff Coupe about $2,000 to attend the 6/16/11 hearing in Michigan and since the request for a summary disposition is invalid these are additional damages Plaintiff Coupe is suffering through the inappropriate actions of TIP.

30) Mr. Coupe has requested a jury trial in Michigan and TIP is attempting, in effect, to have a bench trial proceed on 6/16/11 in violation of the constitutional rights of Mr. Coupe. This alone is enough to have a federal court have jurisdiction over this matter, not a state court 750 miles from his home.

31) Also, it is not equal treatment to require Mr. Coupe to travel 1,500 miles (round trip) and to incur damages of nearly $2,000 in the form of mileage, room and meals costs and lost income when the request for a summary disposition on 6/16/11 is obviously invalid.

32) TIP has offered to settle for $3,500 and a Michigan attorney has quoted $7,000 to defend the Michigan suits and so a requirement that Mr. Coupe attend the hearing on 6/16/11 in person - without justification - for a fraudulent claim - is unjustly in TIP's favor in the extreme. Mr. Coupe has been wiped out by the "great recession" and imposing costs in a wrongful suit is grossly unjust, not to mention that the erroneous credit reports are also limiting his earning abilities significantly.

33) The Michigan court is being respectfully requested (in a concurrent filing) to postpone any hearings until after the New Hampshire Federal Court decides the jurisdictional and constitutional questions raised by Plaintiff Coupe in this case.

Wherefore, Plaintiff Coupe prays and respectfully request that this Honorable Court:

A. Take jurisdiction over this case and request that the Michigan State Court not proceed with any hearings or decisions until after the Federal Court case is resolved.

B. Order Defendant TIP to reimburse Plaintiff Coupe for any travel expenses and lost income he is damaged by if he must attend the hearing in Michigan on 6/16/11.

C. Dismiss Defendant TIP's claim if it is filed against Plaintiff Coupe in this case and if the new filing is essentially identical to the attached Michigan suit of TIP against Plaintiff Coupe.

D. Schedule a jury trial on the damage claims of Plaintiff Coupe.

E. Grant such other relief as it may deem just and proper.

Dated 06/13/11

Respectfully submitted,

GEORGE J. COUPE
Pro Se
(802) 468-2711 X 384
c/o
GEORGE J. COUPE
15 Brookline St.
Nashua, NH 03064

**Certificate of Service.**   FaEx
I hereby certify that on this day a copy of the foregoing motion was forwarded via ~~U.S. Mail~~, to the following:

_____   6/13/11
George J. Coupe                (Date)

Copy to:
Atty. Roger C. Richmond P23570
Attorney for Defendant TIP
Muller, Muller, Richmond Harms & Myers
33233 Woodward Avenue
Birmingham, MI 48009-090345

248-645-2440

### Affidavit of Plaintiff George J Coupe

Now Comes George Coupe, the Plaintiff in the above captioned matter and upon oath, deposes and says:
1. I am George J. Coupe, the Plaintiff and Pro Se in this case.
2. All the facts in the above motion are true to the best of my knowledge and belief.

Dated 06/13/11

_____
George J. Coupe

Subscribed and sworn to before me, at _Merrimack_ County, State of _New Hampshire_ on

_June 14, 2011_

_____
(Signature)

Print name: _CARMELA ARMANO_
Notary public – My commission expires _____

```
CARMELA ARMANO
NOTARY PUBLIC
STATE OF NEW HAMPSHIRE
MY COMMISSION EXP. FEB. 18, 201
```
2/18/2014